FILED
TIME: _____

NOV 0 3 2008

**United States District Court**
**Southern District of Ohio**
**Columbus Division**

JAMES BONINI, Clerk
COLUMBUS, OHIO

| | |
|---|---|
| **All Children Matter, Inc.,**<br>*Plaintiff,*<br>v.<br>**Jennifer Brunner,** Secretary of State of the State of Ohio, in her official capacity; Martin Parks, William Ogg, Charles Calvert, John Mroczkowski, Harvey Shapiro, Bryan Felmet, and Yvette McGee Brown, Members of the Ohio Elections Commission, in their official capacity,<br>*Defendants.* | Case No. **2:08 CV 1036**<br><br>**JUDGE HOLSCHUH**<br><br>**MAGISTRATE JUDGE KING** |

## Verified Complaint for Declaratory and Injunctive Relief

All Children Matter complains as follows:

### INTRODUCTION

1. This is a pre-enforcement, facial and as-applied constitutional challenge to Ohio Revised Code Annotated (hereinafter "O.R.C.") §§ 3599.03 ("corporate prohibition"); 3517.01(B)(25) ("political contributing entity" or "PCE"); 3517.01(B)(8) ("political committee" or "PAC" definition); Ohio Administrative Code (hereinafter "OAC") § 111-1-0.2.K.1 ("primary or major purpose determination"); and O.R.C. §§ 3517.20(A)(1)(a) ("political publication disclaimer"). All Children Matter ("ACM") seeks declaratory and injunctive relief with respect to these statutes and this regulation because each targets political speech or activities that are not unambiguously campaign related. Consequently, each is unconstitutional on its face and as applied to ACM, its intended communications, and to all other similarly situated entities.

2. All of the challenged provisions restrict ACM's constitutionally-protected "issue advocacy," also known as "political speech." *FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652,

**Verified Complaint**                 1

2659 (2007) ("*WRTL II*"). "Issue advocacy conveys information and educates. An issue ad's impact on an election, if it exists at all, will come only after the voters hear the information and choose —uninvited by the ad—to factor it into their voting decisions." *Id.* at 2667. ACM will not make any "expenditures for communications that in express terms advocate the election or defeat of a clearly identified candidate" under *Buckley v. Valeo*, 424 U.S. 1, 44 (1976). ACM's intended communications, therefore, are not properly subject to Ohio's corporate prohibition or disclaimer requirement. Furthermore, because ACM does not make expenditures for express advocacy or coordinate any of its activities with any candidate, it is not properly subject to Ohio's PCE or PAC requirements, as its major purpose cannot be the nomination or election of a candidate. Finally, the test Ohio employs to determine whether an organization is subject to the PAC requirements, the "primary or major purpose determination," is unconstitutional because it is not limited to activities that are unambiguously campaign related and invites free-ranging and unconstitutionally burdensome inquiries into an organization's private information.

3. The Constitution mandates that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. This "'guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.'" *Buckley*, 424 U.S. at 15 (citation omitted). The only authority given government to regulate election-related political speech is its authority to regulate elections. *Buckley*, 424 U.S. at 13 (noting that government authority to regulate elections for federal candidates is "well established"). Consequently, as a threshold matter, any regulation of political speech must be "unambiguously related to the campaign of a . . . candidate." *Buckley*, 424 U.S. 1, 80 (1976).

4. In *Buckley*, the Supreme Court derived two tests, the express advocacy test and the

**Verified Complaint**                          2

major purpose test, to ensure that government does not step beyond its authority in regulating core political speech in election-related laws. *Buckley*'s unambiguously-campaign-related requirement asks whether "the *relation* of the information sought to the purposes of the Act [regulating elections] *may be too remote*," and, therefore, "*impermissibly broad.*" *Id.* at 80 (emphasis added). This threshold requirement is demanded by the First Amendment's plenary protection of political speech, and establishes the permissible scope of any regulation purporting to regulate election-related political speech.[1]

5. The express advocacy test determines when expenditures for communications by individuals and organizations that are not PAC's may be subjected to regulation. *Buckley*, 424 U.S. at 80 (construing "'expenditure' . . . to reach only funds used for communications that expressly advocate [footnote omitted] the election or defeat of a clearly identified candidate. This reading is directed precisely to that spending that is *unambiguously related to the campaign of a particular federal candidate*" (emphasis added)). If the expenditures to be regulated are not defined in "express terms" of advocacy, then the regulation is not unambiguously campaign related and is outside the constitutionally-permitted reach of a government's regulatory scheme. *Id.* at 44. Both *McConnell v. F.E.C.*, 540 U.S. 93, 193 (2003), and *WRTL II*, 127 S. Ct. at 2669 n.7 have subsequently affirmed that "express advocacy" requires so-called "magic words," such as "vote for" or "defeat." *See Buckley*, 424 U.S. at 44 n. 52 (1976) ("communications containing express words of advocacy of election or defeat, such as . . ."). *See also North Carolina Right to*

---

[1] The burden a given regulation places on First Amendment-protected speech is a separate question and will determine the proper constitutional analysis of a regulation once it has been determined that it meets this threshold requirement of being limited to that is unambiguously campaign related. *See, e.g., Buckley*, 424 U.S. at

**Verified Complaint**                  3

*Life v. Leake*, 525 F.3d 274, 281-82 (4th Cir. 2008) ("*Leake*") (reaffirming that express advocacy still requires the magic words).

6. In *McConnell*, the Supreme Court recognized that legislatures may also constitutionally regulate a narrow subset of political speech commonly referred to as "electioneering communications," 540 U.S. at 189-202. In order to constitute an electioneering communication, the communication must be a "broadcast, cable, or satellite communication." *Id.* at 189. *See also WRTL II*, 127 S. Ct. at 2660. ACM's intended activities do not meet this threshold requirement, making the rules regarding electioneering communications inapplicable to its communications.

7. Ohio's corporate prohibition, definition of political publications (which are subject to compelled disclosure via a required "disclaimer," *see* O.R.C. § 3517.20(A)(2)), and its definitions of PAC and PCE do not limit their reach to expenditures that are unambiguously campaign related, as each is not limited to communications that expressly advocate the election or defeat of a clear identified candidate.

8. The Supreme Court requires the major purpose test to ensure that the scope of the comprehensive regulation of organizations as PAC's meets the threshold unambiguously-campaign-related requirement. The comprehensive regulation of an organization's activities is constitutional only for organizations "under the control of a candidate or the major purpose of which is the nomination or election of a candidate. . . . Expenditures . . . of 'political committees' so construed . . . are, by definition, campaign related." *Buckley*, 424 U.S. at 79. So comprehensive regulation of an organization, including organizational and heightened disclosure

Verified Complaint 4

and reporting requirements such as those imposed on PAC's and PCE's in Ohio,[2] are constitutionally permissible only if they are limited in their application to organizations "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Id.* All of such organizations' expenditures "are, by definition, unambiguously campaign related," and thus meet the threshold requirement. *Id.*

9. The major purpose of an organization is determined by examining unambiguously-campaign-related indicia to establish "the major purpose" of an organization. So one would either examine the organic documents of an organization to see if its declared organizational purpose is unambiguously campaign related (e.g., if it were specifically organized to operate as a PAC) or one would determine "the major purpose" based on what it spent most of its money on (since money is what campaign finance laws regulate). Absent articles of incorporation or bylaws

---

[2]In Ohio, PAC requirements include:
1. Registration (including treasurer-designation) and PAC termination requirements. *See* O.R.C. §§ 3517.10.D.1, A.4.
2. Recordkeeping and PAC bank-account requirements. *See id.* § 3517.10.D.2, D.3.
3. Limits on contributions received. *See, e.g., id.* § 3517.102.C.7.b (2005) (contributions received from PACs and PCEs).
4. Limits on contributions made. *See id.* §§ 3517.102.B.2 (contributions made by PACs),
5. Contribution-source bans, *see, e.g., id.* § 3599.03.A.1 (banning corporate and union contributions to PACs but not to PCEs); *see also* 2 U.S.C. § 441b.a, b.2 (national banks and national corporations); *id.* § 441e (foreign nationals), and
6. Extensive reporting requirements. *See, e.g.,* O.R.C. § 3517.10.A-C.

*See, e.g.,* Advisory Op. ("AO") 2006ELC-03 at 3 (Ohio Elections Comm'n May 25, 2006) (stating that being an Ohio PAC means complying with "all of the provisions in Ohio's campaign finance statutes"). Ohio requirements are slightly greater for PACs than for PCE's. A PCE is not required to keep a separate bank account, obtain or use a Ohio-assigned registration number on its reports, reject contributions from corporations and labor unions, or file a termination statement. They are otherwise subject to all the regulations applicable to a PAC.

**Verified Complaint**                                        5

that establish an unambiguously-campaign-related primary purpose, this is essentially an evidentiary issue—if more than half of the group's unambiguously-campaign-related disbursements goes to the nomination or election of candidates, then donations to the organization will more likely than not be intended for, and spent on, electoral advocacy. But if less than half of an organization's expenditures is used for such advocacy, then donations will more likely be intended for, and spent on, subjects beyond the state's interest in regulating elections.[3]

    10. Ohio law defines a political action committee ("PAC") as

> a combination of two or more persons, the *primary or* major purpose of which is to *support or oppose* any candidate, *political party, or issue,* or to influence the result of any election through express advocacy, and that is not a political party, a campaign committee, a political contributing entity, or a legislative campaign fund.

O.R.C. § 3517.01.B.8 (emphases added). Ohio determines and organization's "primary or major purpose" as follows:

---

[3]The major purpose test does not leave an organization's contributions and express advocacy communications unregulated and undisclosed, nor does it open the door to legitimate concerns about undisclosed political activity and conduit concerns. The one-time reporting of contributions and independent expenditures described in *Buckley*, 424 U.S. at 80, and in *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238, 262 (1986) ("*MCFL*"), adequately takes care of such concerns. For individuals and groups not under the control of a candidate that do not have the major purpose of nominating or electing candidates, expenditures for communications meeting the express advocacy test may be subjected to non-PAC disclosure requirements:
> In summary, § 434(e), as construed, imposes independent reporting requirements on individuals and groups that are not candidates or political committees only in the following circumstances: (1) when they make contributions earmarked for political purposes or authorized or requested by a candidate or his agent, to some person other than a candidate or political committee, and (2) when they make expenditures for communications that expressly advocate the election or defeat of a clearly identified candidate.

*Buckley*, 424 U.S. at 80.

**Verified Complaint**                                    6

In determining whether a purpose is a "primary or major purpose" as used in the definition of "political action committee" under section 3517.01 of the Revised Code, the following shall be considered:

>   (a) Whether the combination of two or more persons receives money or any other thing of value in a common account for the specific purpose of *supporting or opposing* any candidate, *political party, legislative campaign fund, political action committee, political contributing entity, or ballot issue;*
>
>   (b) Whether the combination of two or more persons has *or will* make a *continuing pattern* of expenditures from a common account to *support or oppose* any candidate, *political party, legislative campaign fund, political action committee, political contributing entity, or ballot issue;*
>
>   (c) Whether the combination of two or more persons constitutes an entity that was not in existence prior to supporting or opposing any candidate, political party, legislative campaign fund, political action committee, political contributing entity, or ballot issue;
>
>   (d) Whether the total dollar value of the combination of two or more persons' activity described in paragraphs (K)(1)(a), (K)(1)(b) and (K)(1)(c) of this rule during a calendar year *exceeds one hundred dollars.*

11. O.A.C. § 111-1-02.K.1 (2006) (emphases added). In sum, any entity is a PAC if Ohio determines that its "primary or major purpose" is to support or oppose a candidate *or* to influence the result of an election through express advocacy. And its "primary or major purpose" inquiry is not an empirical comparison of spending but a subjective and vaguely defined examination of purposes, plans and context.

12. Ohio law defines a "political contributing entity" ("PCE") as

>   *any entity, including a corporation* or labor organization, that may lawfully make contributions and expenditures and that is not an individual or a political action committee, continuing association, campaign committee, political party, legislative campaign fund, designated state campaign committee, or state candidate fund.

O.R.C. § 3517.01(B)(25) (emphasis added). Ohio defines "expenditure" as "the disbursement or use of a contribution *for the purpose of influencing* the results of an election," O.R.C. §

**Verified Complaint**                          7

3517.01(B)(6) (emphasis added), and defines a contribution in similar terms: "'Contribution' means a loan, gift, deposit, forgiveness of indebtedness, donation, advance, payment, or transfer of funds or anything of value, . . . which contribution is made, received, or *used for the purpose of influencing the results of an election.*" O.R.C. § 3517.01(B)(5) (emphasis added). Ohio regulates an organization as a PCE if it spends any funds that were given for or are ultimately "used for the purpose of influencing the results of an election," regardless of whether its "primary or major purpose" is the nomination or election of a candidate.

13. Ohio's PCE and PAC statutes treat all of an organization's expenditures as though they were unambiguously campaign related without regard to its major purpose. Neither statute properly limits regulation to express advocacy, only the PAC statute even attempts to consider "the major purpose" of an organization, and its "primary or major purpose" inquiry is constitutionally deficient.

## JURISDICTION AND VENUE

14. This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

15. This court has subject matter jurisdiction to adjudicate all claims in this complaint by reason of 28 U.S.C. §§ 1331 and 1343(a).

16. The Southern District of Ohio is the proper venue for this case under 28 U.S.C. § 1391(b) since Defendants perform their official duties in the Southern District of Ohio, and the facts that form the basis for this complaint are all based in this district.

## PARTIES

17. Plaintiff All Children Matter ("ACM") is a non-profit, non-stock, non-membership

**Verified Complaint**                  8

Virginia corporation with its principal place of business in Grand Rapids, Michigan.

18. Defendant Jennifer Brunner is the Secretary of State of the State of Ohio and is sued in her official capacity. The Secretary of State is the "chief election officer" for purpose of the Ohio campaign finance law, and with Ohio elections generally. Ohio Rev. Code Ann. § 3501.05 (hereinafter "O.R.C."). Pursuant to that authority, the Secretary of State is authorized to "issue subpoenas, summon witnesses, [and] compel the production of books, papers, records, and other evidence." O.R.C. § 35.01.05. Furthermore, the Secretary of State has the authority under O.R.C. § 3501.05(N)(2) to:

> [R]eport a failure to comply with a violation of a provision in sections 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20, to 3517.22, 3599.03, or 3599.031 of the Revised Code, whenever the secretary of state has or should have knowledge of a failure to comply with or a violation of a provision in one of those sections, by filing a complaint with the Ohio elections commission under section 3517.153 of the Revised Code.

19. Defendants Martin O. Parks, William L. Ogg, Charles Calvert, John R. Mroczkowski, Harvey H. Shapiro, Bryan Felmet, and Yvette McGee Brown are the current members of the Ohio Elections Commission (the "Commission"), and they (and any successors in office) are sued in their official capacity. The Commission is charged with receiving and acting upon complaints regarding violations of O.R.C. §§ 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20-3517.22, 3599.03, and 3599.031. O.R.C. 3517.153(A). The Commission's jurisdiction includes "declaring whether an organization is a political action committee in order to determine whether election violations of these statutes have occurred." *State, ex rel. Taft, v. Franklin Cty.* 586 N.E.2d 114, 118 (Ohio,1992).

20. The Commission has the power to render advisory opinions, issue subpoenas, both to

compel the appearance of witnesses and the production of documents, impose civil fines, and to refer a matter to a state prosecutor with respect to criminal actions. O.R.C. §§ 3517.153(B), (D) and 3517.155(A)(1).

## FACTS

21. ACM was incorporated in Virginia on or about April 17, 2003.

22. ACM is a non-profit under 26 U.S.C. § 527, which means that it is classified under the Internal Revenue Code as a "political organization" that may receive donations and make disbursements for certain identified political purposes exempt from corporate income taxes.

23. ACM intends to distribute through the mails in Ohio postcards commending the Honorable Jay Hottinger for his work advocating for education reforms improving the quality of education for Ohio children and for his work advocating for Ohio's families as a member of the Ohio House of Representatives, and a postcard commending the Honorable David Daniels for working to lower taxes and cut bloated government bureaucracies as a member of the Ohio House of Representative (the "mailings"). True and correct copies of these are attached as Exhibits B, C, and D. respectively.

24. ACM intends to make materially-similar communications that mention public figures who are candidates in its efforts to advance education reforms, including expanding and funding for new and existing charter school programs, school voucher programs such as Ohio's "EdChoice" and the "special needs" voucher program, and addressing fiscal issues that are directly or indirectly related to school choice. There is a strong likelihood that the present controversy will recur, given the facts that, in the opinion of ACM based on long experience, the mailings and materially-similar communications are effective and useful means of furthering its

**Verified Complaint** 10

organizational purposes, that education reform as described above is the subject of current and recurring debate in Ohio and is the subject of legislation and other government action.

25. Neither the mailings nor any other of ACM's intended communications will expressly advocate for the nomination or election of a clearly identified candidate.

26. As set out in its Articles of Incorporation, ACM's purposes are as follows:

> The specific and primary purposes for which this corporation is formed and for which it shall be exclusively administered and operated are to receive, administer and expend funds in connection with the following:
> 1. To advance education reforms that will provide a quality of education for every child in America;
> 2. To engage in any activities related to state elections that are described in Section 527(e)(2) of the Internal Revenue Code;
> 3. To engage in any and all lawful activities incidental to the foregoing purposes except as restricted herein."

ACM Articles of Incorporation, Article THIRD, Section One. ACM "shall not except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the primary purpose of the corporation," *Id.*, Section Two, and "[n]otwithstanding any other provision of these Articles, the corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by an organization described in Section 527(e)(1) of the Internal Revenue Code of 1986, or the corresponding provisions of any subsequent federal tax laws." ACM Articles of Incorporation, Article Seventh, respectively (a true and correct copy of the Articles of Incorporation are attached as Exhibit A).

27. ACM intends to use corporate resources for the mailings and materially similar activities, which is prohibited under Ohio law under O.R.C. § 3599.03. ACM will not use corporate resources to send the mailings or materially similar activities unless and until it is granted the relief requested herein.

**Verified Complaint** 11

28. ACM believes that its intended activities are not properly subject to Ohio's corporate prohibition because they are not unambiguously campaign related, but if it were granted relief with respect to the corporate prohibition, a disbursement for the mailings would also qualify as a political publication, O.R.C. § 3517.20(A)(1)(a), subject to the disclaimer requirement of 3517.20(A)(2). ACM does not wish to include the disclaimer and believes that it cannot be required for its intended activities, but if its intended activities were not prohibited, it would forced to include the disclaimer or face enforcement action for noncompliance.

29. ACM's intended activities could also be deemed to be an "expenditure" under O.R.C. § 3517.01(B)(6), and ACM could be deemed to be a PCE as a result and made subject to comprehensive regulation or face civil and or criminal penalties for noncompliance. *See supra* n.2. Likewise, if ACM were not prohibited from doing them, its intended activities could improperly be considered indicia of "the primary or major purpose . . . to support or oppose any candidate, O.R.C. 3517.01(B)(8), because Ohio's "primary or major purpose" inquiry, O.A.C. § 111-1-02.K.1, considers activities and speech that are themselves not unambiguously campaign related as indicia of the major purpose of nominating or electing a candidate. The primary or major purpose inquiry is a subjective appraisal and invites an expansive and burdensome investigation into ACM's private matters, including the "purpose" of its donors' giving to ACM.

30. Rather than face an obtrusive investigation, comprehensive regulation as a PAC, or an enforcement action and civil and or criminal penalties for noncompliance with the PAC requirements, ACM will not make the intended communications absent the relief it requests herein with regard to the PCE and PAC statutes

31. Because ACM reasonably believes that it will be subject to an enforcement action

**Verified Complaint** 12

and/or an obtrusive and costly investigation potentially resulting in civil and criminal penalties based on its intended communications, it will not send out the mailings or any intended materially similar communications without all the judicial relief presently requested.

## COUNT I

### O.R.C. 3599.03 - "Corporate Ban"

32. Plaintiff realleges and incorporates by reference all allegations made in all the previous paragraphs.

33. For purposes of Ohio's campaign finance laws, corporations, including non-profit corporations such as ACM, are prohibited from using corporate resources

> . . . for or in aid of or opposition to a political party, a candidate for election or nomination to public office, a political action committee including a political action committee of the corporation or labor organization, a legislative campaign fund, or any organization that support or opposes any such candidate, or for any partisan political purpose . . . .

O.R.C. § 3599.03(A)(1) ("corporate ban").

34. Any corporation that engages in any activity prohibited by section 3599.03 is subject to fines ranging from five hundred to five thousand dollars.

35. Any officer or manager of the corporation that authorizes the prohibited activity is guilty of a misdemeanor of the first degree, and is subject to fines up to one thousand dollars and up to one year in prison. O.R.C. §§ 3599.03(A)(2), (B)(2) and 3599.40. Furthermore, a second conviction of any election law, whether such conviction is for the same offense or not, is a felony of the fourth degree O.R.C. §§ 3599.39 and 3599.40.

36. This regulation is unconstitutionally vague and overbroad in violation of the First and Fifth Amendments of the United States Constitution, as incorporated by the Fourteenth

**Verified Complaint** 13

Amendment to the United States Constitution.

37. The United States Supreme Court has said that the mere fact that an organization such as ACM is a corporation "does not remove its speech from the ambit of the First Amendment." *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 657 (1990).

38. ACM is not properly subject to a corporate prohibition permissibly imposed only on expenditures for unambiguously campaign related advocacy. *See WRTL II*, 127 S. Ct. at 2672 (explaining that the government interest in combating "corporate corruption" does not extend beyond "campaign speech," which the Court defined as express advocacy, *id.* at 2659, or its "functional equivalent," which is necessarily limited to speech meeting the federal definition of an "electioneering communication" and the "appeal to vote" test. *Id.* at 2669 n.7.

39. Because Ohio's corporate ban, O.R.C. § 3599.03, goes substantially beyond any permissible construction of express advocacy, it is unconstitutionally vague and overbroad, both facially and as applied to ACM.

## COUNT 2

### O.R.C. § 3517.20(A)(1) Political Publications

40. Plaintiff realleges and incorporates by reference all allegations made in all the previous paragraphs.

41. Because they do not contain express advocacy for election or defeat of a clearly identified candidate. ACM's intended communications are not properly subject to Ohio's disclaimer requirement, which applies to any "notice, placard, advertisement, sample ballot, brochure flyer, direct mailer, or other form of general publication *that is designed to promote* the nomination, election, or defeat of a candidate." O.R.C. § 3517.20(A)(1)(a) (emphasis added).

**Verified Complaint** 14

42. In *WRTL II*, the Supreme Court confirmed that determining the regulability of political speech on the basis of its intent and effect was rejected as impermissibly vague and overbroad more than thirty years ago, as such an approach "would afford '"no security for free discussion."' 127 S. Ct. at 2665 (quoting *Buckley v. Valeo*, 424 U.S. 1, 43 (1976) (in turn quoting "*Thomas v. Collins*, 323 U.S. 516, 535 (1945))). And the Court in *WRTL II* also confirmed that "*McConnell* did not purport to overrule *Buckley* on this point—or even address what *Buckley* had to say on the subject." *Id.* 424 U.S. 1, 42 (1976). A test delineating regulable political speech "should provide a safe harbor for those who wish to exercise First Amendment rights," and "should also 'reflec[t] our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."'" *Id.* (quoting *Buckley*, 424 U.S. at 14 (in turn quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964))). As with any test based on the intent or effect of a communication, Ohio's definition of political publication "does not remotely fit the bill." *Id.* *See also Minnesota Citizens Concerned for Life, Inc. v. Kelley*, 291 F. Supp. 2d 1052, 1067 (D. Minn. 2003) (striking as unconstitutionally vague a disclaimer requirement for "material that "*tend[s] to influence* voting in a primary or other election" because it "depends upon the reaction of voters to a given communication." (quoting, with emphasis added, Minn. Stat. § 211B.01, subd. 2 (2001)).

43. Because O.R.C. § 3517.20(A)(1)(a) goes substantially beyond any permissible construction of express advocacy, it is unconstitutionally vague and overbroad, both facially and as applied to ACM, its intended activities, and similarly situated parties.

**Verified Complaint** 15

## Count 3

### O.R.C. § 3517.01(B)(25) Political Contributing Entity

44. Plaintiff realleges and incorporates by reference all allegations made in all the previous paragraphs.

45. Ohio law regulates as a PCE "any entity, including a corporation or labor organization, that may lawfully make contributions and expenditures and that is not an individual or a political action committee . . . ." Ohio defines "expenditure" as "the disbursement or use of a contribution *for the purpose of influencing* the results of an election," O.R.C. § 3517.01(B)(6) (emphasis added).

46. Status as a PCE is triggered by "expenditures" or "contributions", which are defined using the very language *Buckley* found to "pose[ ] constitutional problems" when used to define spending triggering regulation for PAC's and non-PAC entities. *See* 424 U.S. at 77. "[T]he phrase, 'for the purpose of . . . influencing' an election or nomination . . . [has the] potential for encompassing both issue discussion and advocacy of a political result." *Id.* at 79. The PCE definition is unconstitutionally vague and overbroad under the First and Fifth Amendments to the U.S. Constitution because it depends on a definition of expenditure that reaches far beyond "spending that is unambiguously related to the campaign of a particular . . . candidate." *Id.* at 80.

47. The PCE statute is also unconstitutionally vague and overbroad because it subjects an organization to comprehensive regulation regardless of whether it is "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." The PCE statute does not examine unambiguously-campaign-related indicia or make any empirical comparison to determine any purpose idiosyncratic to the organization.

**Verified Complaint** 16

## Count 4

### O.R.C. § 3517.01(B)(8) Political Action Committee

48. Plaintiff realleges and incorporates by reference all allegations made in all the previous paragraphs.

49. Ohio's PAC definition is unconstitutionally vague and overbroad under the First and Fifth Amendments to the U.S. Constitution, because it subjects an organization to comprehensive regulation if its "primary or major purpose" is to "support or oppose" any candidate, "or to influence the result of any election through express advocacy." O.R.C. § 3517.01(B)(8)

50. The phrase "support or oppose" is undefined and explicitly goes beyond express advocacy. It gives inadequate notice to enforcers and the regulated community of what these words encompass and so chill protected "issue advocacy," or "political speech." *See Leake*, 525 F.3d at 280, 285 (holding statute regulating speech "to support or oppose the nomination or election of one or more clearly identified candidates" to be "unconstitutionally overbroad and vague"). *See also North Carolina Right to Life v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) (striking down a law containing a support/oppose test and other flaws as unconstitutionally vague and overbroad), *cert. denied*, 528 U.S. 1153 (2000); *Cole v. Richardson*, 405 U.S. 676, 678-85 (1972) (Court treated required oaths to support one's country and "oppose" its enemies as harmless "amenities" merely requiring compliance with other laws, but explained that "oppose" would be vague in other contexts); *Cramp v. Board of Public Instruction*, 368 U.S. 278, 279 (1971) (held "support" unconstitutionally vague); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662-65 (5th Cir. 2006) ("*CFIF*") (imposing express-advocacy construction to save law requiring reporting and disclosure of payments "for the purpose of supporting, opposing, or

**Verified Complaint** 17

otherwise influencing the nomination or election of a person" from overbreadth and vagueness);

51. And if the phrase "to influence the result of any election" is limited in the PAC definition to reach only express advocacy, as properly defined under *Buckley*, then "support[ing] or oppos[ing] any candidate" *necessarily* encompasses more than express advocacy and is overbroad, because Ohio considers *either* as regulable activities and indicia of a PAC. *See* O.R.C. § 3517.01.B.8 (an association is a PAC if its "primary or major purpose" is "to support or oppose any candidate . . . *or* to influence the result of any election through express advocacy.") (emphasis added).

52. Ohio's "primary or major purpose" inquiry does not determine the major purpose of an organization by examining unambiguously-campaign-related indicia because the expenditures it considers are not themselves unambiguously campaign related.

53. Moreover, under O.A.C. § 111-1-02.K.1, ACM *might* be a PAC if it "receives money . . . for the purpose of supporting or opposing any candidate," or "has or will make a continuing pattern of expenditures from a common account to support or oppose any candidate," or "was not in existence prior to supporting or opposing any candidate"—or any unknown combination of these factors. Ohio's "primary or major purpose" inquiry is doubly vague. Each of these factors is vague in itself, and there is no way of knowing which, if any of these, are actually determinative. *See id.* ("In determining whether a purpose is a 'primary or major purpose' . . . the following *shall be considered*"). Upon a complaint, Ohio could conduct an investigation into the private matters of any organization—looking for "a continuing pattern of expenditures" in the past *or the future*, or call in for questioning officers of the organization or donors, seeking to establish the intent or purpose of the donations or expenditures. The threat of

**Verified Complaint**                                18

## Verification

I, Gregory Brock, declare as follows:

1. I am a member of the Board of Directors of All Children Matter, Inc.

2. I have personal knowledge of ACM and its activities, including those set out in the foregoing *Complaint*, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Complaint* concerning and its planned activity are true and correct.

Executed on October 31, 2008.

Gregory Brock

Respectfully submitted

*[signature]*

Philip Gerth #0069475
5340 East Main Street, Suite 208
Columbus, OH 43213
614-856-9399
*Trial Counsel for Plaintiff*

James Bopp, Jr.
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
　*pro hac vice motion pending
*Counsel for Plaintiff*