**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ALL CHILDREN MATTER, INC.,**

      **Plaintiff,**         Case No. 2:08-cv-1036
                                        Judge Smith
       v.                            Magistrate Judge King

**JENNIFER BRUNNER,
OHIO SECRETARY OF STATE,** *et al.***,**

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court upon cross-motions for summary judgment. (Defs.' Mot. Summ. J., Doc. #20; Pl.'s Mot. Summ. J., Doc. #25). After the motions were fully briefed, All Children Matter, Inc. ("ACM") filed a Notice of Supplementary Authorities, to which Defendants Ohio Secretary of State, Ohio Ethics Commission and Its Members filed a Response. Because this Court finds that it lacks subject matter jurisdiction, Plaintiff ACM's Amended Complaint is **DISMISSED** without prejudice.

**I.     Underlying Facts**

Plaintiff All Children Matter, Inc. ("ACM") is a Virginia-based corporation with its principal place of business in Grand Rapids, Michigan. (Am. Compl., ¶ 17). ACM is involved in various "issue-oriented" political campaign efforts and in support of that advocacy, ACM claims it intended to send communications to Ohio residents, commending specific Ohio public figures for their work in education reform. (*Id.* at ¶ 23). ACM plans similar mailings in the future. (*Id.* at ¶ 24). ACM did not send any communications, however, fearful of running afoul of Ohio campaign-finance laws and facing "an obtrusive investigation . . . or an enforcement

action and civil or criminal penalties for noncompliance with [Ohio laws and regulations]." (*Id.* at ¶ 30). Instead, ACM filed this action, seeking declaratory and injunctive relief, asking this Court to declare unconstitutional several of Ohio's campaign-finance laws that target political speech that is not unambiguously campaign-related.[1] (*Id.* at ¶ 1).

## II. Standing

The jurisdiction of the federal courts is limited. Article III § 2 of the United States Constitution grants the federal courts jurisdiction only over specified "cases" or "controversies." Absent a live "case or controversy," a federal court has no subject matter jurisdiction and the case must be dismissed. This "case or controversy" requirement gives rise to the concept of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

In order to establish constitutional standing, a plaintiff must demonstrate the following: (a) that it has suffered an "injury in fact," a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the challenged conduct; and (c) that a favorable court decision is likely to redress or remedy the injury. *Lujan*, 504 U.S. at 560-61; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-103 (1998). "This triad of injury in fact, causation, and redressability constitutes the core of

---

[1] Specifically, ACM claims that since its intended communications are issue advocacy, it is not "properly subject to Ohio's corporate prohibition or disclaimer requirement" under R.C. §§ 3599.03 and 3517.20(A)(1)(a) respectively. (Am. Compl. at ¶ 24). Additionally, ACM claims that since it does not make "expenditures for express advocacy or coordinate any of its activities with any candidates," it is "not properly subject to Ohio's PCE [Political Contributing Entity] and PAC [Political Action Committee] requirements" codified in R.C. §§ 3517.01(B)(25), 3517.01(B)(8), and Ohio Administrative Code § 111-1-0.2.K.1. (*Id.*). ACM argues further that the "test" employed by Ohio to determine whether an organization falls within Ohio's PAC requirements is "unconstitutional because it is not limited to activities that are unambiguously campaign related and invites free-ranging and unconstitutionally burdensome inquiries into an organization's private information." (*Id.*).

Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 532 U.S. at 103-104.

### III. Summary Judgment Standard

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(c)(2), which provides as follows: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto ., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992). Furthermore, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994).

Therefore, summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.*, 477 U.S. at 247-48. *See generally Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989). Thus, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989), quoting *Liberty Lobby*, 477 U.S. at 257. The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* That is, it is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.*, quoting *Matsushita*, 475 U.S. at 586. Moreover, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Consequently, the trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *J.C. Bradford & Co.*, at 1479-80.

**IV.     Analysis**

As a threshold issue, Defendants argue that ACM lacks the critical "injury-in-fact" component to Article III standing, leaving this Court without jurisdiction to hear ACM's claims.

4

ACM fails to provide "any indication of a specific objective chilling effect" establishing injury, offering only "subjective speculation that the government *may* in the future take some action detrimental to ACM." (Defs.' Mot. Summ. J. at 15). In response, ACM contends that the chilling effect *is* the injury, an injury that stems from the existence of the challenged laws and regulation. (Pl.'s Resp. at 18). "The challenged law *objectively* leads to 'self-censorship, a harm that can be realized even without an actual [enforcement or] prosecution.'" (*Id.*, quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997)). Defendants agree that ACM need not to have subjected itself to "actual enforcement proceedings and state regulation in order to establish an injury-in-fact." (Defs.' Reply at 3). Rather, Defendants maintain that ACM "still bears the burden of showing more than a subjective apprehension of 'chill' on speech." (*Id.*). The Sixth Circuit agrees that "more" is required.

In *Morrison v. Bd. of Ed. of Boyd Cty.*, 521 F.3d 602 (6th Cir. 2008), the Sixth Circuit found that subjective chill *alone* is not sufficient to confer standing. There, the plaintiff, in response to a school-district-wide anti-harassment policy, chose not to speak out against homosexuality despite his strong personal beliefs. Alleging that the policy chilled his speech, the plaintiff filed an action against the district school board. The district court granted the school board's motion for summary judgment and dismissed the action, rejecting all of plaintiff's constitutional challenges to the policy. On appeal, the Sixth Circuit found that the plaintiff's as-applied pre-enforcement challenge to the policy was not justiciable, as plaintiff lacked standing. "The claim at stake here involves Morrison's choice to chill his own speech based on his perception that he would be disciplined for speaking. But whether he would have been so punished, we can only speculate." *Id.* at 610. "Allegations of a subjective 'chill' are not an

5

adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Morrison*, 521 F.3d at 608, quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

The *Morrison* court then examined "what 'more' might be required to substantiate an otherwise-subjective allegation of chill, such that a litigant would demonstrate a proper injury-in-fact?" *Id.* at 609. The court presented a "non-exhaustive" list: the issuance of a temporary restraining order, an eight-month investigation, and seizure of membership list. *Id.* (internal citations omitted). "Even this abbreviated list confirms that for purposes of standing, subjective chill requires some specific action on the part of the defendant in order for the litigant to demonstrate an injury-in-fact." *Id. See also Grendell v. Ohio Supreme Court*, 252 F.3d 828, 834 (6th Cir. 2010), quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[F]ears of prosecution cannot be merely 'imaginative or speculative.'"); *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 566 (6th Cir. 1995) (same).

In sum, the *Morrison* court noted, "In order to have standing, therefore, a litigant alleging chill must still establish that a concrete harm—i.e., enforcement of a challenged statute—occurred or is imminent." *Morrison*, 521 F.3d at 610, citing *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C.Cir. 1992) ("[W]hether plaintiffs have standing . . . depends on how likely it is that the government will attempt to use these provisions against them . . . and not on how much the prospect of enforcement worries them.").

Similarly, in *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010), the Sixth Circuit found that the mere risk of prosecution and resulting chill was too speculative to demonstrate injury in fact, where gamefowl sellers and breeders brought a pre-enforcement challenge to anti-animal-fighting provisions of the Animal Welfare Act. In *White*, the plaintiffs were fearful that the provisions would be incorrectly applied to their sales of certain chickens and that they would

6

be wrongly prosecuted. *Id.* at 553. The Sixth Circuit agreed with the district court's analysis, that the chain of events that would have to occur for plaintiffs to suffer false prosecution was too speculative.

> In the district court's words, the "[p]laintiffs' pleading as to the scenario of events that must unfold to injure them—their allegations that they *might* incur injury in the future *if* the law is not properly followed and *if* their intentions are misconstrued—is simply too . . . highly conjectural" to present a threat of immediate injury, as the allegations "rest[ ] on a string of actions the occurrence of which is merely speculative."

*Id.* at 554. Both *Morrison* and *White* highlight the necessity of the component of imminent or actual harm to a plaintiff's alleged injury-in-fact to confer standing in an as-applied, pre-enforcement challenge. The case ACM cites in support of its contention that an existing law's chill to speech is sufficient—*Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272 (6th Cir. 1997)—is no different. There, the Sixth Circuit found that firearm manufacturers and dealers had standing to assert constitutional challenges to a federal law prohibiting possession of certain products, but the Court also found that individuals and organizations challenging the same law did not. The salient difference: the specificity of the injury alleged.

> The injury alleged must be distinct and palpable, and not abstract or conjectural or hypothetical. . . . Because of the ban on specific semiautomatic assault weapons and large capacity ammunition feeding devices, the manufacturing plaintiffs allege they will be forced to redesign and relabel some products and cease production of others. . . . Based on the facts alleged by the manufacturers and dealers indicating the impact of the Act on their businesses, we believe they have demonstrated sufficient injury-in-fact to confer standing. . . .

( . . . )

> We find that, in contrast, the individual plaintiffs have failed to demonstrate a cognizable injury-in-fact sufficient to confer standing prior to enforcement of the Act against them. The mere existence of a statute, which may or may not ever be applied to

7

> plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III. The individual plaintiffs aver that they desire and wish to engage in certain possibly prohibited activities, but are restrained and inhibited from doing so. . . . [T]he individual plaintiffs herein allege merely that they would like to engage in conduct, which might be prohibited by the statute, without indicating how they are currently harmed by the prohibitions other than their fear of prosecution.

*Magaw*, 132 F.3d at 281, 293 (internal citations and quotation marks omitted). Although the *Magaw* Court dealt with equal protection and commerce clause challenges—not "core First Amendment rights", 132 F.3d at 294—the *Morrison* Court continued the line of reasoning that "more" than subjective chill is required, as discussed *supra*.

At bottom, ACM offers no showing of imminent or actual harm beyond its self-imposed chill. To survive Defendants' summary judgment motion, ACM must have submitted affidavits or other evidence showing, through specific facts, that it had suffered or would suffer an imminent harm from enforcement of the statutes. *Lujan*, 504 U.S. at 563. In *Lujan*, the Court observed that "[s]tanding is not an ingenious academic exercise in the conceivable, but as we have said *requires*, at the summary judgment stage, *a factual showing of perceptible harm*." *Id.* at 566 (internal citation and quotation marks omitted; emphasis added). The *Lujan* plaintiffs' evidence pertinent to this issue was comprised of affidavits of two members of one environmental group. After review of these affidavits, the Court noted that the affiants only professed an intent to return to places abroad where species were alleged to be endangered by the regulation. The Court observed that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564.

Offering even less than the *Lujan* plaintiffs, ACM presents no evidence at all to demonstrate that it has suffered or will suffer an imminent harm through enforcement of the

8

statutes or regulation. In response to Defendants' motion for summary judgment, ACM attaches no exhibits. In support of its own motion for summary judgment ACM attaches several exhibits, including two affidavits, but none provides any support for its contention that harm is actual or imminent.[2] All told, there is no evidence on the record before the Court in support of ACM's contention that it faces actual or imminent harm. The Court is left only with ACM's scenario of possible events that could lead to, someday, a possible injury. That risk, as in *White*, "remains too remote to confer standing." *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010).

ACM somewhat half-heartedly argues that prior enforcement may render future prosecution imminent. Referenced only in a footnote in its response, ACM states that while prior enforcement "is not material to establishing standing," the facts that Defendants have "on another occasion enforced Ohio law against ACM" and that Ohio lacks a "policy, statute, or regulation protecting ACM from enforcement or prosecution" are sufficient to establish imminent injury. (Pl.'s Resp., at 18, n.15.) Although not discussed in its response, ACM points this Court to page 15 of its Motion for Summary Judgment, which contains the paragraph this Court assumes ACM references, as follows:

> ACM, for example, is the subject of an OEC enforcement action now on appeal in Ohio state courts regarding speech unrelated to the speech at issue in this action. In that matter, Defendants assessed a fine of more than $5 million against ACM and All

---

[2] In support of its Motion for Summary Judgment, ACM attaches as follows: Exh. 1, Declaration of Greg Brock, an ACM board member, who only states that "ACM reasonably fears Defendants will say each communication attached to the verified complaint promotes, supports, attacks or opposes—and in particular 'supports'—the clearly identified candidate." (¶ 10); Exh. 2, printout of ACM website; Exh. 3, ACM bylaws; Exh. 4, IRS Form 8872, Political Organization Report of Contributions and Expenditures, and Schedule A; Exh. 5, United States District Court (N.D. Fla.) case law; Exh. 6, United States District Court (N.D. Fla.) case law; Exh. 7, Notice of briefing and oral argument schedule, *Citizens United v. Federal Election Comm'n*, 129 S.Ct. 2893 (2009); Exh. 8, United States District Court (E.D. Va.) case law; Exh. 9, United States District Court (D.D.C.) case law; Exh. 10, United States District Court (M.D. Fla.) case law; Exh. 11, Affidavit of Kevin Dewine, elected representative to the Ohio House of Representatives, who makes no statement relevant to actual or imminent harm.

> Children Matter Ohio PAC. ACM and ACM Ohio PAC, of course, dispute the holding and fine.

(Pl.'s Mot. Summ. J. at 15). Because, according to ACM, the speech prohibited in the previous action is "unrelated to the speech at issue in this action," the prior enforcement is not relevant to any analysis of injury-in-fact. Even if that prior enforcement were more on point, it would not suffice. *Feiger v. Michigan Supreme Court*, 553 F.3d 955 (6th Cir. 2009). In *Feiger*, Michigan attorney Geoffrey Feiger was charged with violating Michigan Rules of Professional Conduct 3.5(c) and 6.5(a), the "courtesy and civility" provisions for making "vulgar" comments about Michigan Court of Appeals judges. *Id.* at 957. Feiger and co-plaintiff challenged the constitutionality of those provisions on facial grounds, and the district court held the provisions to be overly broad and vague. On appeal, the Sixth Circuit vacated the district court judgment and remanded for dismissal for lack of jurisdiction, finding, as follows:

> [Plaintiffs] failed to demonstrate actual present harm or a significant possibility of future harm based on a single, stipulated reprimand; they have not articulated, with any degree of specificity, their intended speech and conduct; and they have not sufficiently established a threat of future sanction under the narrow construction of the challenged provisions applied by the Michigan Supreme Court.

*Id.* The fact that Plaintiff Feiger had, in the past, been subjected to disciplinary proceedings was not sufficient to confer standing. *Id.* at 965. "While previous sanctions might, of course, be evidence bearing on whether there is a real or immediate threat of repeated injury . . . where the threat of injury is speculative or tenuous, there is no standing to seek injunctive relief." *Id.* at 966 (citation and internal quotation marks omitted).

Also unavailing is ACM's slim argument that because the Sixth Circuit has applied the "chill principle" to "[a]dult cabarets," "[n]ude dancing" and "[o]ther public nudity," then "surely the Sixth Circuit must also apply this principle in this action, where there is a realistic danger of

10

the challenged law's application against political speech, which lies at the core of the First Amendment." (Pl.'s Resp. at 21, citing *Leonardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir. 1990), internal quotation marks and alterations omitted). Those three decisions, however, are easily distinguishable, as in each case the injury-in-fact element was either not at issue or was held to be present. In *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994), the Sixth Circuit held that a public indecency ordinance, although constitutionally applied to the plaintiff, was facially unconstitutional under the First Amendment overbreadth doctrine. Standing was not an issue in *Triplett*, though, so it is not instructive here.

In *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994), the Court reversed the district court's dismissal, holding that there was a present case or controversy where a plaintiff corporation alleged sufficient injury-in-fact. In *G&V*, the plaintiff alleged that a defendant city violated its First Amendment rights when it threatened to seek revocation of plaintiff's liquor license if plaintiff's bar presented topless dancing. Plaintiff further alleged that defendant Michigan Liquor Control Commission ("MLCC") violated its rights by declaring that it would revoke plaintiff's liquor license in deference to the city's request "so long as the municipality affords Plaintiff rudimentary due process[.]" *Id.* at 1073. The Court found that the plaintiff had standing to bring the action by alleging sufficient injury-in-fact supported, in part, by evidence of a threatening letter from the city. "The revocation or nonrenewal of Plaintiff's license or permit would be a distinct and palpable injury in fact, which, given the MLCC's policy of complete deference to local governments regarding licenses and permits, is indeed imminent." Although the plaintiff in *G&V* chose to forego presenting topless dancing for fear of losing its license—similar to ACM's claim that it elected not to mail the postcards for fear of running afoul of campaign-finance laws—there was a clear and distinct

11

threat of prosecution to the *G&V* plaintiff as evidenced by the threatening letter and the liquor commission's admitted deference to city governments. No evidence of such direct threats is presented here.

Finally, in *H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009), the injury-in-fact alleged by plaintiff—and acknowledged by the district court and the Sixth Circuit—was intertwined with a zoning scheme and licensing process controlled by the defendant city. That matter involved constitutional challenges to alleged licensing schemes, and the Court noted that "in cases where, as here, businesses protected by the First Amendment must apply for special zoning approval as a condition of operating, this renders the zoning scheme equivalent to a licensing process that effectuates a prior restraint upon protected expression." *Id.* at 351. Zoning and licensing are not at issue here and, thus, *H.D.V.* is inapt.

In sum, ACM cannot meet at least one part of the "irreducible constitutional minimum of standing": (a) a "concrete and particularized" harm that is "actual or imminent, not conjectural or hypothetical [.]" *Lujan*, 504 U.S. at 560. Concrete harm is no less significant to a facial challenge to a statute or regulation, such as ACM's facial challenge to these certain Ohio laws. *Morrison*, 521 F.3d at 610, citing *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 463 (6th Cir. 2007) ("[O]verbreadth does not excuse a party's failure to 'allege an injury arising from the specific rule being challenged . . .'") (quoting *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007)); *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975) (noting that to have "overbreadth standing," a plaintiff "must present more than allegations of a subjective chill. There must be a claim of specific present objective harm or a threat of specific future harm.").

As a result, ACM lacks standing to bring its as-applied and facial challenges to the Ohio statutes and regulation at issue.  Therefore, this Court is without jurisdiction to hear its claims.

### IV.     Conclusion

Based on the foregoing, this Court is without jurisdiction over the instant case and must **GRANT** Defendants Ohio Secretary of State, Ohio Elections Commission and Its Members' Joint Motion for Summary Judgment (doc. # 20) on the issue of standing only.  Having reached this conclusion, the Court does not address Defendants' alternative arguments for summary judgment.  Plaintiff All Children Matter, Inc.'s Motion for Summary Judgment (doc. # 25) is **DENIED** as moot.  Plaintiff's Amended Complaint is **DISMISSED** without prejudice.

The Clerk shall remove Documents 20 and 25 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

    *s/ George C. Smith*
    **GEORGE C. SMITH, JUDGE**
    **UNITED STATES DISTRICT COURT**